UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROGER MOORE,<br><br>   Plaintiff,<br><br>v.<br><br>ANTHONY CALDERONE, BRANDON ALLEN, PAUL LUNKWITZ, BEN WATHEN, and LESTER HERNDON,<br><br>   Defendants. | 2:10-cv-00034-PMP-RJJ<br><br>ORDER |

  Presently before this Court is Defendants Anthony Calderone, Brandon Allen, Paul Lunkwitz, Ben Wathen, and Lester Herndon's Motion to Dismiss Second Amended Complaint, or in the Alternative, Motion for Summary Judgment (Doc. #20), filed on June 9, 2010. On June 25, 2010, Plaintiff Roger Moore ("Moore") filed an Opposition to Defendants' Motion to Dismiss Second Amended Complaint, or in the Alternative, Motion for Summary Judgment (Doc. #22). Defendants filed a Reply (Doc. #23) on July 6, 2010.

**I. BACKGROUND**

  Plaintiff Moore was an inmate at High Desert State Prison ("HDSP") during the relevant period between January and July 2008. (Second Am. Compl. (Doc. #13) at 1.)[1] During that time, Defendants Brandon Allen ("Allen"), Paul Lunkwitz ("Lunkwitz"), and Anthony Calderone ("Calderone") were correctional officers at HDSP, and Ben Wathen

---

[1] On a motion to dismiss, the Court presumes the facts as set forth in Plaintiff's Second Amended Complaint as true. Catholic League for Religious & Civil Rights v. City & County of San Francisco, 567 F.3d 595, 599 (9th Cir. 2009).

("Wathen") and Lester Herndon ("Herndon") were correctional caseworkers at HDSP. (Id. at 2-3.)

Sometime around January 19, 2008, Moore filed a grievance against Allen after Allen refused Moore's several requests to access his cell. (Id. at 3.) Two days later, Lunkwitz threatened to remove all of Moore's property from his cell and told Moore that "We don't do the write-up thing." (Id. at 4.) On January 25, Moore again requested access to his cell from Allen. (Id.) Allen denied Moore access, and Moore asked another officer for a grievance. (Id.)

Before Moore filed that grievance, Allen entered Moore's cell and removed Moore's television, fan, radio/CD player, air mattress, headphones, watch, hot pot, and other personal items. (Id. at 5.) Moore informed Allen that those personal items were on his property card. (Id.) Allen did not have Moore's property card, but Allen claimed that none of the items were listed and took the property without checking. (Id.) Moore then filed a grievance against Allen for allegedly removing the property in retaliation for asking for a grievance. (Id. at 6.) Two days later, Allen filed a Notice of Charges accusing Moore of possessing contraband and not following rules and regulations in relation to the property Allen had confiscated. (Id.) However, Allen's superiors returned Moore's property to him by January 31, prior to any disciplinary hearings. (Id.) On March 19, the contraband charges Allen filed against Moore were dismissed. (Id.)

Moore filed another grievance against Allen on April 18 after Allen prevented Moore from attending medical appointments on February 22 and April 18. (Id.) On April 19, Allen, who no longer was assigned to Moore's cell area, ransacked Moore's room. (Id. at 7.) Moore filed grievances against Allen for this conduct. (Id.)

On February 6, Moore requested Lunkwitz let Moore into his cell to use the toilet. (Id. at 8.) Lunkwitz refused, so Moore asked for a grievance. (Id.) Lunkwitz then let Moore into his cell, but as Moore was walking into his cell, Lunkwitz shouted and

2

pointed at Moore, "I'll tear up every room in here because of you! I'm going to enforce all the rules in this unit because of you!" (Id.) Moore filed a grievance accusing Lunkwitz of trying to incite the other inmates to harm Moore or dissuade him from filing further grievances. (Id. at 8-9.)

On February 10, Lunkwitz closed Moore's cell door on Moore's shoulder as Moore was exiting. (Id. at 9.) Moore stepped back into his cell after being hit and told Lunkwitz that he had been hit and was injured. (Id.) Lunkwitz replied, "So what." (Id.) Moore filed a grievance against Lunkwitz for this incident. (Id. at 9.) Moore went to the infirmary to have his shoulder examined. (Id.) Moore's shoulder showed no exterior signs of damage, but he received pain medication. (Id. at 10.) Moore was charged twenty-five dollars for the infirmary visit. (Id.) Lunkwitz filed a Notice of Charges against Moore on the same day for failure to follow directions and for giving false information stemming from the cell door incident. (Id.) Moore later was found guilty of Lunkwitz's failure to follow directions charge, but the false information charge was dismissed. (Id.)

On April 11, Moore filed a grievance against Calderone after Calderone denied Moore access to his cell to use the toilet. (Id. at 11.) After Moore filed the grievance, Calderone ordered a lockdown of Moore's unit. (Id. at 12.) This prompted a second grievance that day from Moore against Calderone accusing Calderone of arousing the other inmates against Moore in retaliation for Moore's previous grievance filing. (Id.) Calderone subsequently filed a Notice of Charges against Moore for organizing a demonstration and giving false information in relation to the cell entrance situation. (Id.) On July 5, the charges Calderone filed against Moore were dismissed. (Id. at 14.)

A couple of days after the cell entrance incident with Calderone, Moore met with Wathen to discuss his problems with Calderone. (Id. at 13.) Moore was not given notice of Calderone's charges and had not been found guilty of Calderone's charges. (Id.) On April 16, Wathen and Herndon were on a panel that voted to reduce Moore's classification from

1  Level 1 to Level 2 because of Calderone's charges.  (Id.)  Moore lost his prison
2  employment and a variety of other privileges with this level reduction.  (Id.)  Moore
3  submitted a grievance about his re-classification.  (Id. at 14.)  Moore's grievance was
4  upheld and he was restored to Level 1 classification on May 8.  (Id.)

5  Moore thereafter brought suit in Nevada state court against Defendants in their
6  official and personal capacities, alleging violations of his First and Eighth Amendment
7  rights as well as several state law claims.[2]  Moore alleges Defendants' retaliatory actions in
8  response to Moore's grievance filings chilled his First Amendment rights.  Moore also
9  contends that Defendants were deliberately indifferent to his health and safety in arousing
10 other inmates' ire toward him and intentionally closing his cell door on him, violating
11 Moore's Eighth Amendment rights.

12 Defendants removed the action to this Court and now move to dismiss the First
13 and Eighth Amendment claims against them in their official capacities, arguing that as
14 employees of the state they are immune in their official capacities.  Defendants also move to
15 dismiss, or in the alternative, move for summary judgment on the First and Eighth
16 Amendment claims, arguing that Moore's First Amendment rights were not chilled and that
17 Moore was not substantially harmed by the cell door being shut on him to support an
18 excessive force claim.  Further, Defendants contend they are entitled to qualified immunity.

19 Moore responds that his First Amendment rights do not actually have to be
20 chilled, it is enough if a person of ordinary firmness would be chilled.  He also contends
21 that he is not arguing the cell door incident exhibited excessive force, but that the cell door
22 incident and Defendants' incitement of other inmates toward him constitute deliberate
23 indifference to his health and safety.  Moore also requests that the Court deny Defendants'
24 motion pending further discovery.

25
26     [2] Defendants do not move to dismiss the state law claims.

4

## II. LEGAL STANDARDS

In deciding a motion to dismiss for failure to state a claim, the Court presumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the non-moving party. Catholic League for Religious & Civil Rights v. City & County of San Francisco, 567 F.3d 595, 599 (9th Cir. 2009). However, these facts must establish a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Mere "conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. But pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

If the Court considers matters outside the pleadings in relation to a motion to dismiss, the Court treats the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Pursuant to Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In deciding a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in the light most favorable to the non-moving party. Sluimer v. Verity, Inc., 606 F.3d 584, 586 (9th Cir. 2010). The moving party bears the initial burden of negating an essential element of the non-movant's claim or demonstrating the non-movant failed to establish an essential element of the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the non-moving party may not rely merely on allegations or denials in its own pleading, but must respond to a motion for summary judgment with specifically-designated facts to show a genuine issue for trial. Id. at 324.

///
///
///

## III. DISCUSSION

### A. Defendants' Immunity in Their Official Capacities

Under 42 U.S.C. § 1983, states and state employees acting in their official capacities are not considered "person(s)" subject to liability for money damages. Wolfe v. Strankman, 392 F.3d 358, 364-65 (9th Cir. 2004). To the extent Moore's claims arise under § 1983, his claims cannot be sustained against Defendants in their official capacities. Therefore, the Court grants the motion to dismiss in relation to Defendants in their official capacities with respect to Moore's First and Eighth Amendment claims.

### B. Plaintiff's First Amendment Claims

Moore claims Defendants violated his First Amendment rights by Defendants' retaliatory actions taken against him for filing grievances. Moore alleges that his First Amendment rights were chilled by Defendants filing false charges against him, depriving him of property, initiating his level reduction, and inciting other inmates against him. Defendants argue that Moore's allegations are not factually sufficient to sustain his claims. Defendants also contend Moore did not refrain from filing grievances, so his First Amendment rights were not actually chilled or infringed, and Moore failed to prove there was no legitimate correctional goal served by Defendants' actions.

Prisoners have a First Amendment right to file prison grievances and civil lawsuits. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Because a prison official's retaliatory actions taken against a prisoner for filing a suit or grievances undermines the protection inherent in this right, actions taken in retaliation for an inmate exercising his First Amendment rights also violate the Constitution. Id.

> [A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,[] and (5) the action did not reasonably advance a legitimate correctional goal.

Id. at 567-68 (footnote omitted). "A prisoner does not have to demonstrate that his speech was actually inhibited or suppressed." Id. at 569. Rather, a prisoner's exercise of his First Amendment rights is chilled if there were detrimental actions taken against him that would "chill or silence a person of ordinary firmness." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). Arbitrary property confiscation, filing baseless disciplinary violations in response to protected activities, unjustified reclassifications, and subjecting a prisoner to retaliation by other inmates are examples of detrimental actions that would chill a person of ordinary firmness. See Rhodes, 408 F.3d at 568 (arbitrary confiscation of property); Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (retaliatory issuance of false rules violations); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (labeled a "snitch" and thereby subject to retaliation by other inmates); Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985) (retaliatory reassignment from vocational training). The timing of adverse actions following protected actions can be considered circumstantial evidence of retaliatory intent. Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). Allegations that the defendant's actions were arbitrary and capricious are sufficient to allege retaliation and a lack of legitimate correctional goals. Rizzo, 778 F.2d at 532.

Defendants contend that Moore's rights were not actually chilled because he was able to file his grievances and this suit. The standard, however, is not actual denial of the right to redress grievances, but rather whether a person of ordinary firmness would be deterred from exercising his First Amendment rights. Moore alleges his First Amendment rights were chilled. Moore's level reduction, property confiscation, the several charges against him, and the inducement of other inmates to harm Moore are sufficiently detrimental actions that would chill a person of ordinary firmness. Additionally, viewing the facts as alleged and all reasonable inferences in Moore's favor, Moore sufficiently has alleged retaliatory intent and lack of a legitimate correctional goal. Moore alleges Lunkwitz

threatened retaliatory cell searches and Defendants filed charges against Moore quickly after Moore's grievance filings, most of which subsequently were dismissed. The Court denies Defendants' motion to dismiss the First Amendment claims.

With respect to Defendants' alternative summary judgment motion, Defendants contend that they had a legitimate penological interest because Allen[3] thought that Moore possessed items that were not on Moore's property card, Calderone had duties to attend to prior to letting Moore into his cell, and there were other reasons for the charges filed against Moore. Defendants have not supplied evidence to support these arguments. Moore, on the other hand, verified his Second Amended Complaint under oath, and provided an affidavit in response to Defendants' motion which again affirms under penalty of perjury the facts stated in the Second Amended Complaint. Defendants' mere assertions without evidentiary support are insufficient to demonstrate Moore failed to establish an essential element of his claim. In any event, Moore's sworn statements would raise a genuine issue of material fact. The Court denies Defendants' Motion for Summary Judgment as to the First Amendment claims.

### C. Plaintiff's Eighth Amendment Claims

Moore alleges Defendants acted with a deliberate indifference to his health and safety, in violation of his Eighth Amendment rights. Moore contends that Defendants Lunkwitz and Calderone intentionally aroused other inmates' animosity toward him, creating a risk of physical altercations by threatening tier lockdowns and searches. Moore also contends that Lunkwitz intentionally closed the cell door on him. Defendants move to dismiss arguing Moore cannot show that Lunkwitz had the requisite mental state to violate the Eighth Amendment and that the harm from the alleged cell door incident was no more

---

[3] Defendants substitute Lunkwitz for Allen in their Motion, but Moore alleges Allen was responsible for confiscating his property. (Second Am. Compl. at 5.)

than de minimis. Moore responds that his allegations that Defendants intentionally incited other inmates against him and closed the cell door on him, suffice to state an Eighth Amendment claim. Defendants' reply does not address Moore's allegation that his Eighth Amendment claim is based on an intentional failure of Defendants to provide a safe environment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). To prove that prison conditions violated his Eighth Amendment rights, an inmate must show both an objective and subjective component. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). Objectively, the violation must be "sufficiently serious." Id. (quotation omitted). A violation is sufficiently serious if it deprives the inmate of "the minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Subjectively, the prisoner must show the defendant acted with a culpable state of mind. Johnson, 217 F.3d at 731. To establish the requisite state of mind, an inmate must show that "the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the risk." Foster v. Runnels, 554 F.3d 807, 814 (9th Cir. 2009).

Moore fails to plead an Eighth Amendment violation with respect to the cell door incident. Moore does not respond to Defendants' argument that any deprivation Moore suffered was de minimis. Additionally, even taking all of Moore's allegations as true, Moore was not deprived of the minimal civilized measure of life's necessities. His shoulder suffered no external injury, the injury was treated, and he received pain medication. The Court will deny Moore's request for further discovery, as no amount of discovery will alter this result. The Court therefore grants Defendants' motion to dismiss with respect to Moore's Eighth Amendment claim to the extent it relies on the cell door incident.

///

1  However, Moore also alleged an Eighth Amendment claim based Defendants'
2  incitement of other inmates against Moore.  Defendants did not move on this claim in their
3  original motion, and did not respond to Moore's argument in their reply.  The Court
4  therefore will not dismiss Moore's Eighth Amendment claim based on inmate incitement.

**D. Qualified Immunity**

6  Qualified immunity is a protection from liability for government officials when
7  "'their conduct does not violate clearly established statutory or constitutional rights of
8  which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815
9  (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity
10 applies unless the plaintiff establishes that (a) the facts show the defendant violated a
11 constitutional right, and (b) the right was clearly established at the time of the violation.
12 Saucier v. Katz, 533 U.S. 194, 201 (2001).  Retaliation against prisoners for exercising the
13 right to file prison grievances "is itself a constitutional violation, and prohibited as a matter
14 of clearly established law."  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)
15 (quotation omitted).

16 In regard to Moore's First Amendment claim, Defendants argue there was no
17 violation of a constitutional right because Moore had no right to unauthorized property in
18 his cell.  However, Moore is not alleging a deprivation of property rights.  Moore is alleging
19 a violation of his right to redress of grievances.  Moore alleges Defendants filed charges,
20 reduced his privileges, confiscated his property, and incited other inmates against him to
21 retaliate for Moore's grievances against Defendants.  Taking these allegations as true,
22 Moore has alleged retaliatory punishment for grievances.

23 Additionally, More's right to be free from the specific types of retaliatory actions
24 Defendants allegedly took in this case was clearly established at the time of the alleged
25 violations.  It was clearly established that arbitrary property confiscation, filing false
26 disciplinary violations, unjustified reclassification, and subjecting a prisoner to retaliation

10

by other inmates were actions that would chill person of ordinary firmness from exercising his First Amendment rights.  See Rhodes, 408 F.3d at 568; Hines, 108 F.3d at 268; Valandingham, 866 F.2d at 1138; Rizzo, 778 F.2d at 531-32.  Therefore, the Court denies qualified immunity as to Moore's First Amendment claims.

The Court already dismissed Moore's Eighth Amendment claim with respect to the cell door incident, and thus the Court need not consider qualified immunity as to that portion of Moore's Eighth Amendment claim.  Defendants did not move for qualified immunity with respect to the inmate incitement portion of Moore's Eighth Amendment claim.  The Court therefore will not consider qualified immunity with respect to Moore's Eighth Amendment claim with respect to Defendants' allegedly inciting other inmates against him.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants Calderone, Allen, Lunkwitz, Wathen, and Herndon's Motion to Dismiss Second Amended Complaint, or in the Alternative, Motion for Summary Judgment (Doc. #20) is hereby GRANTED in part and DENIED in part.  The motion is granted to the extent that Plaintiff's First and Eighth Amendment claims against all Defendants in their official capacities are dismissed with prejudice, and that Plaintiff's Eighth Amendment claim involving the cell door incident is dismissed with prejudice.  The motion is denied in all other respects.

DATED: August 23, 2010

_____
PHILIP M. PRO
United States District Judge